UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMI MAYHEW, individually and as sole owner of PRIMARY HEALTHCARE SOLUTIONS, INC., an Illinois Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>GENERAL MEDICINE, PC, a Michigan Corporation, and THOMAS M. PROSE, MD,<br><br>        Defendants. | Case No.<br>Hon.<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff, JAMI MAYHEW ("Ms. Mayhew"), individually and as sole owner of PRIMARY HEALTHCARE SOLUTIONS, INC., an Illinois Corporation ("Primary Healthcare"), by her attorneys, LEWIS BRISBOIS BISGAARD & SMITH LLP, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 3, for her Complaint against Defendants, GENERAL MEDICINE, PC, a Michigan Corporation ("General Medicine") and THOMAS M. PROSE, MD ("Dr. Prose"), states as follows:

### NATURE OF THE CASE

1. This is an action for damages and equitable and injunctive relief for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq.*, all as amended.

2. Ms. Mayhew was previously employed as a Nurse Practitioner with General Medicine under Dr. Prose. As of November 1, 2014, Ms. Mayhew was working and being compensated on a per-patient basis only. *See* Employment Contract, attached as **Exhibit A**. Ms.

Mayhew was also required to chart and conduct on-call duty. **Ex. A**. The employment contract superseded any and all prior agreement(s).

3.  In or around November of 2017, Ms. Mayhew assisted in a federal investigation involving potential Medicare and/or Medicaid fraud by General Medicine involving both federal agents and the Illinois State Police. Ms. Mayhew was also contacted in February of 2018 about providing additional assistance, but Dr. Prose demanded that she refrain from speaking with investigators.

4.  In or about December of 2017, Ms. Mayhew founded and began providing medical services through Primary Healthcare, specifically ear cleaning services. Her duties at Primary Healthcare were distinct from and did not interfere with her obligations for General Medicine.

5.  When Dr. Prose learned of Ms. Mayhew's services through Primary Healthcare, he demanded that Ms. Mayhew cease providing said services and forfeit all profits accrued through Primary Healthcare.

6.  Dr. Prose sent multiple threatening messages to Ms. Mayhew, including threatening legal action against her.

## PARTIES

7.  Plaintiff Jami Mayhew is a citizen of the United States residing in Illinois. At all relevant times, Plaintiff was the sole owner and employee of Primary Healthcare Solutions, Inc., an Illinois Corporation providing ear cleaning services.

8.  Defendant General Medicine is a Michigan Corporation that provides medical services nationwide, including in the State of Illinois.

9. Defendant Thomas Prose, MD is a citizen of the United States residing, upon information and belief, in Michigan. He is the president and registered agent of General Medicine.

10. Plaintiff and Defendants are "persons" as defined in 29 U.S.C. § 203(a).

11. Defendants are also "employers" as defined in 29 U.S.C. § 203(d), as both General Medicine and Dr. Prose were acting directly or indirectly in the interest of an employer in relation to Plaintiff when she was an employee.

12. Defendants are also "employers" as defined in 820 ILCS 105/3(c), as both General Medicine and Dr. Prose were acting directly or indirectly in the interest of an employer in relation to Plaintiff when she was an employee.

13. Defendants are also "employers" as defined in 740 ILCS 174/5, as both General Medicine and Dr. Prose were acting within the scope of their authority on behalf of an employer in dealing with Plaintiff when she was an employee.

14. At all relevant times, Plaintiff was also an "employee" as defined in 29 U.S.C. § 203(e)(1), as she was an individual who was employed by Defendants, her employers.

15. At all relevant times, Plaintiff was also an "employee" as defined in 820 ILCS 105/3(d), as she was an individual permitted to work by an employer in an occupation.

16. At all relevant times, Plaintiff was also an "employee" as defined in 740 ILCS 174/5, as she was an individual who was employed by an employer.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over General Medicine because it is doing business in this District and because the acts alleged occurred, in whole or in part, within this Court's District.

18. This Court has personal jurisdiction over Dr. Prose in his capacity as the President of General Medicine, which is doing business in the State of Illinois.

19. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as her claims arise in part under a federal statute.

20. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the Parties are citizens of different states/territories.

21. This Court has supplemental jurisdiction over Plaintiff's state-based claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution ("U.S. Const.").

22. Venue is properly placed in this District, pursuant to 28 U.S.C. § 1391(b), because the facts and events giving rise to Plaintiff's claims occurred in this District. Plaintiff seeks a trial by jury on all counts where available.

## SUBSTANTIVE ALLEGATIONS

23. Ms. Mayhew began working for General Medicine in 2007. At the time, she was a full-time, salaried employee, responsible for visiting clients, conducting on-call, and other tasks.

24. On October 16, 2014, Ms. Mayhew began working on a per-patient basis. **Ex. A**. However, all of her other duties for which she was responsible while a full-time salaried employee, including on-call work, remained.

25. For example, even when Ms. Mayhew began working on a per-patient basis, General Medicine required that she be on-call Monday through Friday, during which time she had to oversee four (4) facilities.

26. The on-call work also involved alternating weekend work whereby Ms. Mayhew was responsible for being on-call for 12 facilities.

27. In or around November of 2017, Ms. Mayhew assisted in a federal investigation involving potential Medicare and/or Medicaid fraud by General Medicine involving both federal agents and the Illinois State Police.

28. Ms. Mayhew informed Dr. Prose of her contact with the authorities immediately after speaking with them.

29. Ms. Mayhew was also contacted in February of 2018 about providing additional assistance with respect to the investigation.

30. Ms. Mayhew did not speak with the authorities. Instead, she told Dr. Prose, who demanded that she not speak with anyone about the investigation.

31. In or about December of 2017, Ms. Mayhew founded and began providing medical services through Primary Healthcare, specifically ear cleaning services. Her duties at Primary Healthcare were distinct from and did not interfere with her obligations for General Medicine.

32. Primary Healthcare provided services at some of the same facilities as General Medicine. Although Ms. Mayhew's duties at Primary Healthcare were distinct from and did not interfere with her obligations for General Medicine, she serviced some of the patients who also received services from General Medicine.

33. On December 4, 2018, Dr. Prose called Ms. Mayhew. He stated that he was aware that she was providing ear cleaning services through Primary Healthcare.

34. Dr. Prose demanded that Ms. Mayhew stop providing services through Primary Healthcare and further demanded that she forfeit all monies earned through providing services to General Medicine patients.

35. Dr. Prose sent Ms. Mayhew multiple threatening messages between December 5, 2018 and December 12, 2018, including threats of legal action.

36. Ms. Mayhew offered her resignation from General Medicine on December 11, 2018. Her resignation was accepted on December 12, 2018.

## COUNT I
### (Violation of the Fair Labor Standards Act - General Medicine)

37. Plaintiff repeats and realleges Paragraphs 1 to 36 with the same force and effect as though fully set forth herein.

38. The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce…$7.25 an hour, beginning 24 months after that 60th day[.]" 29 U.S.C. § 206(a)(1)(C).

39. The FLSA also provides that "no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

40. Defendant intentionally failed to pay Plaintiff the minimum wage – or any wage – for the time she spent working on-call from 2014 through 2018.

41. Defendant intentionally failed to pay Plaintiff 1 ½ times her regular wage for time worked in excess of 40 hours per week during many pay periods from 2014 through 2018.

42. Defendant, by its failure to fully pay Plaintiff the minimum wage and to fully compensate Plaintiff for overtime, as set forth above, violated the FLSA, including, but not limited to, 29 U.S.C. §§ 206-207.

43. Defendant acted willfully and knew, or showed reckless disregard as to whether, its conduct was prohibited by the FLSA.

44. The FLSA also provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee…affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…[t]he court in such action shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

45. The pattern, practice, and uniform administration of unlawful corporate policies regarding employee compensation as alleged herein create an entitlement to recovery by Plaintiff for damages and wages owed, and for penalties, interest, costs, and attorneys fees, in amounts to be proven.

## COUNT II
### (Violation of the Illinois Minimum Wage Law - General Medicine)

46. Plaintiff repeats and realleges Paragraphs 1 to 45 with the same force and effect as though fully set forth herein.

47. The IMWL provides that "on and after July 1, 2010 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $8.25 per hour." 820 ILCS 105/4(a)(1).

48. The IMWL also provides that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." 820 ILCS 105/4a(1)

49. Defendant intentionally failed to pay Plaintiff the minimum wage – or any wage – for the time she spent working on-call from 2014 through 2018.

50. Defendant intentionally failed to pay Plaintiff 1 ½ times her regular wage for time worked in excess of 40 hours per week during many pay periods from 2014 through 2018.

51. Defendant, by its failure to fully pay Plaintiff the minimum wage and to fully compensate Plaintiff for overtime, as set forth above, violated the IMWL, including, but not limited to, 820 ILCS 105/4(a)(1) and 820 ILCS 105/4a(1).

52. Defendant acted willfully and knew, or showed reckless disregard as to whether, its conduct was prohibited by the IMWL.

53. The IMWL also provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a).

54. The pattern, practice, and uniform administration of unlawful corporate policies regarding employee compensation as alleged herein create an entitlement to recovery by Plaintiff for damages and wages owed, and for penalties, interest, costs, and attorneys fees, in amounts to be proven.

## COUNT III
### (Violation of the Illinois Whistleblower Act - General Medicine)

55. Plaintiff repeats and realleges Paragraphs 1 to 54 with the same force and effect as though fully set forth herein.

56. Plaintiff engaged in protected activity within the meaning of the IWA, 740 ILCS 174/15(b), when she participated in a federal investigation into potential Medicare and/or Medicaid fraud by Defendants.

57. Defendant retaliated against Plaintiff because she engaged in this protected activity, including by demanding that she stop providing services through Primary Healthcare, demanding that she forfeit all monies earned through providing services to patients who also happened to be patients of General Medicine, and by sending her threatening messages, including threats of litigation.

58. As a result of Defendant's conduct, Plaintiff has suffered extensive damages, including, but not limited to, severe emotional distress.

## COUNT IV
### (Violation of the Fair Labor Standards Act - Dr. Prose)

59. Plaintiff repeats and realleges Paragraphs 1 to 58 with the same force and effect as though fully set forth herein.

60. The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce…$7.25 an hour, beginning 24 months after that 60th day[.]" 29 U.S.C. § 206(a)(1)(C).

61. The FLSA also provides that "no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

62. Defendant intentionally failed to pay Plaintiff the minimum wage – or any wage – for the time she spent working on-call from 2014 through 2018.

63. Defendant intentionally failed to pay Plaintiff 1 ½ times her regular wage for time worked in excess of 40 hours per week during many pay periods from 2014 through 2018.

64. Defendant, by his failure to fully pay Plaintiff the minimum wage and to fully compensate Plaintiff for overtime, as set forth above, violated the FLSA, including, but not limited to, 29 U.S.C. §§ 206-207.

65. Defendant acted willfully and knew, or showed reckless disregard as to whether, his conduct was prohibited by the FLSA.

66. The FLSA also provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee…affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…[t]he court in such action shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).

67. The pattern, practice, and uniform administration of unlawful corporate policies regarding employee compensation as alleged herein create an entitlement to recovery by Plaintiff for damages and wages owed, and for penalties, interest, costs, and attorneys fees, in amounts to be proven.

## COUNT V
**(Violation of the Illinois Minimum Wage Law - Dr. Prose)**

68. Plaintiff repeats and realleges Paragraphs 1 to 67 with the same force and effect as though fully set forth herein.

69. The IMWL provides that "on and after July 1, 2010 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $8.25 per hour." 820 ILCS 105/4(a)(1).

70. The IMWL also provides that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." 820 ILCS 105/4a(1)

71. Defendant intentionally failed to pay Plaintiff the minimum wage – or any wage – for the time she spent working on-call from 2014 through 2018.

72. Defendant intentionally failed to pay Plaintiff 1 ½ times her regular wage for time worked in excess of 4 hours per week during many pay periods from 2014 through 2018.

73. Defendant, by his failure to fully pay Plaintiff the minimum wage and to fully compensate Plaintiff for overtime, as set forth above, violated the IMWL, including, but not limited to, 820 ILCS 105/4(a)(1) and 820 ILCS 105/4a(1).

74. Defendant acted willfully and knew, or showed reckless disregard as to whether, his conduct was prohibited by the IMWL.

75. The IMWL also provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such

underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a).

76. The pattern, practice, and uniform administration of unlawful corporate policies regarding employee compensation as alleged herein create an entitlement to recovery by Plaintiff for damages and wages owed, and for penalties, interest, costs, and attorneys fees, in amounts to be proven.

## COUNT VI
### (Violation of the Illinois Whistleblower Act - Dr. Prose)

77. Plaintiff repeats and realleges Paragraphs 1 to 76 with the same force and effect as though fully set forth herein.

78. Plaintiff engaged in protected activity within the meaning of the IWA, 740 ILCS 174/15(b), when she participated in a federal investigation into potential Medicare and/or Medicaid fraud by Defendants.

79. Defendant retaliated against Plaintiff because she engaged in this protected activity, including by demanding that she stop providing services through Primary Healthcare, demanding that she forfeit all monies earned through providing services patients who also happened to be patients of General Medicine, and by sending her threatening messages, including threats of litigation.

80. As a result of Defendant's conduct, Plaintiff has suffered extensive damages, including, but not limited to, severe emotional distress.

## COUNT VII
### (Declaratory Judgement - All Defendants)

81. Plaintiff repeats and realleges Paragraphs 1 to 80 with the same force and effect as though fully set forth herein.

82. Plaintiff's employment contract states that "in the event your relationship with General Medicine ends" she "will not provide services in those facilities that General Medicine provides services." **Ex. A** at ¶ 5.

83. The services that Plaintiff provides through Primary Healthcare are unique and distinct from any medical services provided by General Medicine in existing facilities or any services provided by Ms. Mayhew during her employment with General Medicine.

84. The language in the employment contract is also limited only to present facilities, not facilities in which General Medicine may provide services in the future.  The language also states that it will only apply when the relationship with General Medicine ends.

85. This is a proceeding for a declaratory judgment as to Plaintiff's right of a permanent injunction restraining Defendants from enforcing the contract language referenced above and unreasonably restricting her ability to earn a living.  Ms. Mayhew is informed and believes that Defendants have not enforced this language against others who have left the employ of General Medicine.

86. Plaintiff has no plain, adequate, or complete remedy at law to address the wrongs alleged herein, and this suit for injunctive relief is her only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' enforcement of clearly unenforceable contractual terms based upon the plain language of the employment contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, JAMI MAYHEW ("Ms. Mayhew"), as sole owner of PRIMARY HEALTHCARE SOLUTIONS, INC., respectfully requests that this Honorable Court

enter judgment against Defendants, GENERAL MEDICINE, PC, a Michigan Corporation and THOMAS M. PROSE, MD, as follows:

    a.    Declaring that Defendants' practices complained of herein unlawful and in violation of the FSLA, the IMWL, and the IWA;

    b.    Permanently enjoining Defendants, their agents, successors, officers, employees, representatives, attorneys, and those acting in concert with them from engaging in the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

    c.    Ordering modification or elimination of the practices policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law, ensuring Defendants will not continue to underpay in violation of the FLSA and the IMWL, or continue to retaliate in violation of the IWA;

    d.    Awarding Plaintiff all unpaid wages, including wages at a rate not less than 1 ½ times the regular rate at which Plaintiff was employed for all hours worked over 40 hours during any workweeks, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

    e.    Awarding Plaintiff all unpaid wages, including wages at a rate not less than 1 ½ times the regular rate at which Plaintiff was employed for all hours worked over 40 hours during any workweeks, plus an equal amount in liquidated damages pursuant to 820 ILCS 115/14(a);

    f.    Awarding Plaintiff all witness fees, court costs, and other litigation costs incurred in this action, including reasonable attorney's fees;

    g.    Awarding Plaintiff liquidated and/or punitive damages for Defendants' willful conduct; and

    h.    Awarding all other relief deemed just.

Respectfully submitted,

*/s/ Jeffrey T. Bash*

**LEWIS BRISBOIS BISGAARD & SMITH**

By:   One of Its Attorneys

Jeffrey T. Bash (ARDC No. 6280946)
Jeff.Bash@LewisBrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
Mark Twain Plaza II
103 West Vandalia Street, Suite 300
Edwardsville, IL 62025
Telephone 618.307.7290
Facsimile 618.692.6099
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on  December 14th , 2018, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon plaintiff's counsel and all parties who have entered an appearance.

  */s/ Jeffrey T. Bash*_____
   LEWIS, BRISBOIS, BISGAARD & SMITH LLP