IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMI MAYHEW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-cv-2177-RJD |
| | ) |
| GENERAL MEDICINE, PC and | ) |
| THOMAS M. PROSE, M.D., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Plaintiff's Motion for Reconsideration (Doc. 85) of the Court's Order granting Summary Judgment in favor of Defendants (Doc. 83). Defendants filed a Response (Doc. 86). Plaintiff filed a Reply (Doc. 87). The Court granted Plaintiff leave to file a Supplemental Response to Defendants' Motion for Summary Judgment (Doc. 97). Defendant filed a Reply to the Supplemental Response (Doc. 99). Plaintiff also filed a Motion for Sanctions (Doc. 96). Defendants filed a Response (Doc. 99). As explained further, Plaintiff's motions are DENIED.

**Background**

Plaintiff filed this suit against Thomas Prose, M.D. and her former employer, General Medicine. Plaintiff's Complaint contained the following claims:

    Count I:    Violation of the Fair Labor Standards Act-General Medicine

    Count II:    Violation of the Illinois Minimum Wage Law-General Medicine

    Count III:    Violation of the Illinois Whistleblower Act-General Medicine

>Count IV:     Violation of the Fair Labor Standards Act-Dr. Prose
>
>Count V:      Violation of the Illinois Minimum Wage Law-Dr. Prose
>
>Count VI:     Violation of the Illinois Whistleblower Act-Dr. Prose
>
>Count VII:    Declaratory Judgment-Dr. Prose and General Medicine

Defendants filed a Motion for Summary Judgment on June 18, 2019.  Plaintiff filed a Motion to Stay the Summary Judgment Motion to Conduct Discovery; the Court granted her motion and set the discovery deadline for December 6, 2019.  Plaintiff then filed a Motion for Extension of Time to Extend the Discovery Deadline, which was granted in part.  Plaintiff was given a deadline of January 6, 2020 to file a Response to Defendants' Motion.

Plaintiff filed her Response to Defendants' Motion for Summary Judgment on January 6, 2020, without any indication that she did not have necessary documents requested from Defendants.  Defendants filed a Reply on January 13, 2020.  On January 21, 2020, the Court issued its order granting summary judgment on Counts I and IV, which were both dismissed with prejudice. The Court declined to exercise supplemental jurisdiction over Counts II, III, V, and VI and these claims were dismissed without prejudice. The Court abstained from ruling on Plaintiff's declaratory judgment claim, as it involved the same legal question pending in a Michigan state court between Plaintiff and Defendants.

After the January 21, 2020 order ("the summary judgment order") was issued, the Court learned the following. One business day before Plaintiff's Response to Defendants' Motion for Summary Judgment was due, counsel for Defendants informed Plaintiff's counsel that records relating to calls received by Plaintiff while working for General Medicine ("the phone records") were located at the office of Defendants' Michigan counsel.  The parties have conflicting interpretations of the subsequent events that led to Plaintiff's counsel receiving the phone records

in the Southern District of Illinois in March, approximately six weeks after the Court issued its summary judgment order. Plaintiff' filed a motion to supplement her Response to Defendants' Motion for Summary Judgment, and the Court granted her leave to file a Supplemental Response that set forth the relevancy of the phone records.  Plaintiff also filed a Motion for Sanctions against Defendants and their counsel.

### I.     Plaintiff's Motion for Reconsideration

A motion for reconsideration filed within 28 days of the final judgment is considered under Federal Rule of Civil Procedure 59(e).  *Carter v. City of Alton*, 922 F.3d 824, 826, n. 1 (7th Cir. 2019).  A motion to alter or amend judgment pursuant to Rule 59(e) may be granted if there is newly discovered evidence, or if the Court made a manifest error of law or fact.  *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1992) (*citing Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)).  Plaintiff did not specify the Federal Rule of Civil Procedure under which she filed her motion to reconsider.  However, Plaintiff's motion was filed within 10 days of the summary judgment order and she argues the order should be reconsidered because of newly discovered evidence and because the Court erred in its analysis.  Accordingly, the Court will consider Plaintiff's motion under Rule 59 (e).

Rule 59(e) allows the Court to correct errors in order to avoid unnecessary appellate procedures.  *Id*.  However, "the rule…certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.  *Id.* (*citing LB Credit Corp. v. Resolution Trust Corp*., 49 F.3d 1263, 1267 (7th Cir. 1995).  Litigants should not consider the district court's opinions to be "first drafts" that can be revised without good cause.  *A&C Construction & Installation. Co. WLL v. Zurich American Ins. Co.*, *et al*., 963 F.3d 705, 710 (7th Cir. 2020) (*citing Quaker Alloy Casting Co. v. Gulfco Indus.,*

*Inc.,* 123 F.R.D. 282, 288 (N.D. Ill. 1988).

Plaintiff asks the Court to reconsider its summary judgment order in favor of Defendants on Counts I and IV.  In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence."  *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010).  The Seventh Circuit has remarked that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (*quoting Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

In granting summary judgment, the Court addressed the allegations of Plaintiff's complaint under the Fair Labor Standards Act ("FLSA").  Plaintiff alleged that Defendants violated the FLSA by 1) not paying Plaintiff while she was working on-call from 2014-2018; and 2) not paying Plaintiff overtime.  The Court found that Plaintiff's time was effectively her own while she was working on-call, and therefore she was not entitled to compensation under the FLSA for her time spent on-call.  The Court further found that Plaintiff was exempt from FLSA's overtime requirements because she was employed in a "bona fide professional capacity", meaning she was 1) compensated on a fee basis at a rate of not less than $684 a week; and 2) her primary duty involved performing work that required knowledge of an advanced type in a field of science.  In her Motion for Reconsideration and Supplemental Response to Defendants' Motion for Summary Judgment, Plaintiff asks the Court to reconsider its summary judgment order on Plaintiff's FLSA

claims for two reasons: 1) the phone records; and 2) Plaintiff contends the Court failed to construe the evidence in the light most favorable to Plaintiff and improperly shifted the burden of proof to Plaintiff.

### A. Phone records

The parties disagree on what the phone records show. Plaintiff contends the phone records show that she received, on average, seven phone calls a day related to her patients. Plaintiff argues that the Court should infer the records are favorable to her case because of the timing and manner in which the records were produced to her. Defendants contend that the phone records only reflect text messages that were sent to Plaintiff.

Plaintiff and Defendants agree on one aspect: the phone records show communications *to* Plaintiff. It is this very reason why, regardless of anything else the phone records reflect, Plaintiff's argument on a motion for reconsideration fails. The phone records are not newly discovered evidence. No one was in a better position than Plaintiff to know whether she received, on average, seven phone calls a day related to her patients. The Court does not expect that Plaintiff kept a running total of how often she received work-related calls or messages. But Plaintiff was able to explain the following to the Court in her Declaration in Opposition to Defendants' Motion for Summary Judgment:

- "During the course of both my regularly scheduled shifts and my on-call shifts, I received urgent and non-urgent calls, as well as text messages, to which I was required to reply."
- "When I was on call, I was required to be available by telephone."
- "If I failed to respond to calls while I was on call, I would be disciplined by General Medicine."

If Plaintiff wanted the Court to consider the volume of phone communications she received while on-call or during her regularly scheduled shifts, her Opposition to Defendants' Motion for

Summary Judgment was her opportunity to make that argument.  The Court acknowledges that without the phone records, Plaintiff would not have known the exact number of phone calls/ text messages, and perhaps she could not even make a close estimate.   Still, Plaintiff never contended that the volume of phone communications she received while working for General Medicine was a factor the Court should consider when ruling on Defendants' Motion for Summary Judgment.

Instead, Plaintiff argued that while she was on call, her time was not her own because she had to be available to answer calls and "prepared to go to a facility at a moment's notice."  Doc. 79, p. 8.   Thus, Plaintiff explained, she could not go out of town, make appointments, or engage in certain activities around her home or community while she was on call. Plaintiff never argued that the sheer number of calls/text messages affected her ability to go out of town, make appointments, or participate in certain activities, e.g., a party with her daughters, a garage sale.   A motion for reconsideration is not an opportunity to present arguments that could have been made before the Court issued its order.

Plaintiff also argues that the phone records show "patient encounters" for which she was not compensated, and therefore these "patient encounters" should be considered when determining whether she made the minimum to be considered an overtime exempt employee.   Plaintiff's argument is unclear on this issue.[1]   Regardless, Plaintiff never argued that the volume of phone calls she received affected her exempt status.   While Plaintiff did not have data reflecting the number of phone communications she received related to her duties at General Medicine, she was in the best position to know whether she received phone calls that were so onerous as to effectively leave her uncompensated for her work.

---

[1] Plaintiff had to make at least $684 a week to be exempt from FLSA's overtime requirements. Plaintiff made between $2506 and $4278 a week from 2015-2018.

### B. The Court's Summary Judgment Analysis

Plaintiff contends that the Court erroneously accepted Defendants' version of events regarding the nature of Plaintiff's time spent "on-call." In finding that Plaintiff's time spent on-call was effectively her own, the Court explained "when one considers all of an individual's personal activities-things like eating, sleeping, doing housework, reading, watching television, exercising, shopping, it is clear that the on-call rules as alleged by Plaintiff were not particularly restrictive at all." Plaintiff claims that by making this statement, the Court disregarded paragraph 15 of the declaration Plaintiff made in opposition to summary judgment. Paragraph 15 reads:

> "It was crucial that I was available at all times that I was on call, and I was regularly not able to attend to my own personal events or obligations if I was scheduled to be on call. Accordingly, if I had events planned, I was required to specifically request that I not be on call so that I could attend such events…[s]uch events include taking my daughter to an orthodontist appointment, participating in a community garage sale, going to my daughters' dance recitals, going to baseball games, and going on a penguin tour at the zoo, among other events."

The Court neither disregarded nor misunderstood paragraph 15 of Plaintiff's declaration. Certainly, the Court understands that while Plaintiff was on-call, she had to answer her phone and she may have had to travel to a facility. Therefore, while she was on call, she could not participate in activities or events which she would not want to leave suddenly. Surely she would not want to leave her daughter stranded at the orthodontist if she needed to go to a facility. She would not want to receive a phone call from a facility during her daughters' dance recital. Plaintiff requested that she not be on call during those types of events. But that does meant that the evidence presented precludes the Court from making the reasonable inference that Plaintiff could, e.g., watch television, perform housework, nap, or take a walk while she was on-call, knowing that she may have to abandon those activities (or activities like them) to go to a facility or take a phone

call. Simply because an employee is limited in where she may go and what she may do while she is on-call does not mean she must be compensated for her time spent waiting while on-call. *Jonites v. Exelon Corp.*, 522 F.3d 721, 723-24 (7th Cir. 2008).

Finally, Plaintiff contends the Court improperly shifted the burden to her to prove that she was not employed by General Medicine in a bona fide professional capacity and therefore entitled to overtime. Plaintiff misreads the Court's summary judgment order. To be clear, Defendants met their burden in establishing that General Medicine employed Plaintiff in a bona fide professional capacity. None of the arguments presented by Plaintiff created a genuine issue of material fact. Plaintiff is an advanced practice nurse licensed to prescribe controlled substances to patients. She was responsible "for the medical management of patients in consultation with physicians." Doc. 81-2, p. 12. Regardless of whether Defendants told Plaintiff how to fill out paperwork, and regardless of whether Defendants told Plaintiffs to follow specific elements of an encounter, the only reasonable inference from the evidence presented is that Plaintiff performed work for General Medicine in a bona fide professional capacity.

Plaintiff failed to establish that either newly discovered evidence or a manifest error by the Court warranted relief pursuant to Federal Rule of Civil Procedure 59(e). Accordingly, Plaintiff's Motion for Reconsideration is denied.

## II.    Motion for Sanctions

Plaintiff argues that Defendants and their counsel should be sanctioned because they 1) "represented to the Court that responsive documents do not exist when, in fact, they did"; 2) failed to comply with the Court's November 22, 2019 discovery dispute order; and 3) intentionally shuffled 12,535 pages "so they were in no semblance of order and obviously not maintained in the ordinary course of business." Plaintiff's Motion for Sanctions lacks appropriate support for these

serious allegations.

Before the Court becomes involved in a discovery dispute, there must first be a discovery request. Plaintiff's Motion for Sanctions contains 101 pages, including exhibits. Noticeably absent from those 101 pages is the initial discovery request to Defendants that preceded the discovery dispute.

At the party's request, the Court held a discovery dispute conference on November 19, 2019. Prior to the conference, counsel for Plaintiff represented to the undersigned that Plaintiff had asked Defendants for "documents/communications concerning work [Plaintiff] performed while 'on call'." At the discovery dispute conference, counsel for defendants represented that there were no such documents. Defendants were ordered to supplement their responses to affirmatively state that no such documents exist. The problem is, however, that Plaintiff apparently never served Defendant with a specific discovery request for "documents/communications concerning work [Plaintiff] performed while 'on call." Consequently, there was no such request for Defendants to supplement their response to affirmatively state "no such documents exist."

Defendants acknowledge there was a certain discovery request made by Plaintiff which could, if interpreted broadly, encompass the phone records. Counsel for Defendants points the Court to Plaintiff's Request for Production #22, which requested "all documents…reflecting the number of 'calls' taken by Jami Mayhew for General Medicine, P.C., when she was working on-call, as opposed to a regularly scheduled shift." Defendants responded, "there are no documents which separate calls taken while on-call and not working and calls taken while working." Plaintiff does not dispute that Defendants' response to this request was accurate.

Plaintiff repeatedly claims in her Motion for Sanctions that Defendants represented that the

phone records in question did not exist. The record reflects that this is simply not true. On October 3, 2019, Defendants gave Plaintiff the name, address, and phone number of the third-party vendor believed to possess detailed phone records. Doc. 98-2, p. 3. Plaintiff chose not to pursue these records.

At some point, Defendants obtained the more detailed phone records from the third-party vendor. Those records were placed in boxes at the office of Defendants' Michigan attorneys. What happened next was the subject of the Court's February 25, 2020 hearing. Defendants' counsel told Plaintiff's counsel that Plaintiff's Michigan attorneys could get the boxes from Defendants' Michigan attorneys. Plaintiff's attorneys wanted the documents produced electronically, but Defendants refused. In the meantime, the Court issued its summary judgment order on January 21, 2020. Following the February 25, 2020 hearing, the Court ordered Defendants to produce the records to Plaintiff within the Southern District of Illinois, and Defendants did so. While it certainly would have been more efficient if Defendants had simply delivered the documents without Court intervention, the Court sees no basis for sanctioning Defendants.

Finally, Plaintiff asserts that counsel for Defendants intentionally shuffled the 12,525 records before producing to Plaintiff. Multiple attorneys and staff members at the law firm representing Plaintiff in this matter reached this conclusion after analyzing the records. But these records were not Defendants' records. They were produced to Defendants by a third-party vendor. Plaintiff's counsel has no idea how the records were produced to Defendants' counsel, or how the third-party vendor maintained these records. Plaintiff argues that after this case was closed she should have been allowed to take a deposition to find out how the records were maintained, but Plaintiff was made aware that these records possibly existed on October 3, 2019-

more than three months before the Court entered its summary judgment order. Her attorneys apparently made no effort to obtain these records. Had Plaintiff's attorneys obtained these records directly from the third-party vendor, they could have compared the records to what Defendants produced. The Court is unwilling to sanction Defendants and their counsel based on Plaintiff's attorneys' interpretation of the order of these records.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration (Doc. 85) is DENIED. Plaintiff's Motion for Sanctions (Doc. 96) is DENIED.

**IT IS SO ORDERED.**

**DATED:   September 21, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**